In re FLOYD & BOHR CO.

(District Court, W. D. Kentucky. December 20, 1912.)

BANKRUPTCY (§ 345*)—PREFERENCES—LABOR CLAIMANTS—LIEN—BALANCE OF DEBT—PROOF AS GENERAL CREDITORS.

Bankr. Act July 1, 1898, c. 541, § 64b, cl. 5, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3448), gives priority to debts owing to any person who by the laws of the state is entitled to priority. Section 57, cl. "h," provides that the value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement, etc., and the amount of such value credited on the claims, and a dividend paid only on the unpaid balance. Ky. St. § 2487, declares that, where the property of any mine, railroad, manufacturing establishment, etc., shall pass into the hands of an assignee for creditors, or shall in any wise come to be distributed among creditors, the employés of the debtor, and the persons who have furnished materials or supplies to carry on the business, shall have a lien on so much of the property and effects as may have been involved in the business, and all the accessories connected therewith, including the interest of such company, owner, or operator in the real estate used in carrying on the same. *Held* that, where creditors were entitled to priority in the distribution of the assets of a bankrupt under section 2487 for part of their claims, they were entitled to hold what they had received under the statute, and to prove the balance as a general claim, and share pro rata with general creditors in the general assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Floyd & Bohr Company. On petition of the German Insurance Bank to determine the rights of certain preferred labor claimants. Referee's order, holding that such claimants were entitled to prove the balance of their claims as general creditors, affirmed.

Kohn, Bingham, Sloss & Spindle, of Louisville, Ky., for German Ins. Bank.

Gifford & Steinfeld, of Louisville, Ky., for priority creditors.

S. M. Sapinsky, of Louisville, Ky., for trustee.

EVANS, District Judge. In this case the German Insurance Bank has sought a review by the court of an order of the referee. Section 2487 of the Kentucky Statutes is in this language:

"When the property or effects of any [mine], railroad, turnpike, canal or other public improvement company, or of any owner or operator of any rolling mill, foundry or other manufacturing establishment, whether incorporated or not, shall be assigned for the benefit of creditors, shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, or shall in any wise come to be distributed among creditors, whether by operation of law or by the act of such company, owner or operator, the employés of such company, owner or operator in such business, and the persons who shall have furnished materials or supplies for the carrying on of such business shall have a lien upon so much of such property and effects as may have been involved in such business, and all the accessories connected therewith, including the interest of such company, owner or operator in the real estate used in carrying on such business."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This provision (which it may be important to remember was enacted in 1893 and amended in 1894), in connection with section 64b, cl. 5, of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]), has often been before this court and before the Circuit Court of Appeals; but on the pending petition for review the question presented is a new one, and we have felt the pressure of the argument of the bank's counsel, and have been much inclined, if possible, to yield to it.

In Re Falls City Shirt Mfg. Co. (D. C.) 98 Fed. 592, we held, in substance, that the lien created by the Kentucky statute became effective whenever, but not before, the estate of the bankrupt came under the control of the court to be distributed under the adjudication. See, also, the opinion of the Circuit Court of Appeals in Re Bennett, 153 Fed. 673, 82 C. C. A. 531. The inchoate lien thus becoming effective thereafter rested upon that portion alone of the property of the bankrupt which had been involved in its manufacturing business, as provided in section 2487. In Re Starks-Ullman Saddlery Co., 171 Fed. 834, 96 C. C. A. 506, it was settled that no lien exists upon the property of the bankrupt involved in the mere mercantile part of its business.

In the phase of the case now presented the question is whether the creditors who have priority under section 2487, after crediting the amounts to be realized from that priority, can each hold on to what he receives under the statute and also prove the balance, not thus provided for, as a general claim, and be entitled to share upon it pro rata with the general creditors in the general assets. The referee held that any creditor entitled to priority under the Kentucky statute was also entitled to prove as a general creditor the balance of his debt not paid through the operation of that statute, and with some reluctance we are constrained to affirm that ruling. Unless possibly in partnership cases, we know of no provision in the Bankruptcy Act which in any wise demands that, where a creditor has received part payment on a debt as the result of a legal priority, he shall be denied further dividends until the general creditors are paid dividends equal to those received as the result of the legal priority. On the contrary, section 57, c. "h," is in this language:

"The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance."

The Bankruptcy Act (unless it be otherwise in partnership cases) gives no hint that any equity doctrine respecting the marshaling of assets and securities shall be applied in bankruptcy cases. This is also true in respect to section 2487 of the Kentucky Statutes and in respect to the entire subject to which that statute relates. Not a word is found, either in the act or in the Kentucky statute, which affords a basis for reversing the referee's ruling or for upholding the contention of the German Insurance Bank.

Of course, in construing section 64a, cl. 6, of the act in connection with the Kentucky statute, this court would follow any decisions of

the Court of Appeals of Kentucky construing section 2487; but we cannot find that that court has given the question now before us any consideration, and we have little to guide us outside the Bankruptcy Act itself. However, it may possibly be that some light is thrown upon the question by other provisions of the Kentucky Statutes. Section 74 is as follows:

"Every voluntary assignment made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims, after the payment of the expenses of the trust; except that property, or any part thereof, conveyed by the deed of assignment, and upon which there is a valid lien, shall be first applied to the discharge of the lien debt; and if the property is not sufficient to satisfy the lien, the lien creditor shall have the right to present the remainder of his debt unsatisfied by the lien property as a claim against the estate, and receive thereon his pro rata share of the assets in the same manner as creditors whose claims are not secured by a lien; except that debts due by the assignor as guardian, committee, trustee of an express trust created by deed or will, or as personal representative shall be paid in full before the general creditors receive anything."

This section, and indeed the whole chapter in which that section is found, obviously relate to "voluntary" assignments only. As this proceeding was begun by creditors who filed a petition in "involuntary" bankruptcy, the bankrupt cannot be said to have made a "voluntary" assignment. Section 74, therefore, does not expressly apply, though it aids in giving very clear indication, especially when read in connection with section 1916, presently to be mentioned, that the general policy of Kentucky is always to allow a secured creditor, equally with other creditors, to share in the assets upon any balance due on his debt after his security has been applied. Doubtless this is upon the ground that otherwise the security might not always secure. Section 74 probably could not be said to apply, even if the proceeding in involuntary bankruptcy had been based upon a general assignment as an act of bankruptcy. This case is more like the state of case provided for in section 1916 of the Kentucky Statutes, found in the chapter on "Fraudulent and Preferential Conveyances," and which reads thus:

"In the distribution of the assets of any debtor, after the payment of the costs and expenses of the suit, the debts due as guardian, personal representative and as trustee, if the trust be created by deed or will duly recorded in the proper clerk's office, shall have priority over debts due general creditors, and property upon which there is a valid lien shall be first applied to the payment of the lien debt, and the remainder, if any, of the lien debt unsatisfied by the lien property may be presented as a claim against the estate, and the same pro rata paid thereon as upon other unpreferred debts."

Under the chapter last referred to, such conveyance, if suit be seasonably brought, is made to result in an "involuntary" assignment. This chapter was enacted on December 20, 1892. The section last copied may have been, and we think it certainly was, enacted to change the rule announced by the Court of Appeals of Kentucky on January 14, 1892, in the case of Bank of Louisville v. Lockridge, 92 Ky. 472, 18 S. W. 1, and which was opposite to that prescribed in section 74, which section and section 1916 seem to be the only statutory provisions bearing on the subject in this state. But whether the light they shed upon the question before us be valuable or not, we must hold that

there is nothing in the Bankruptcy Act itself or in section 2487 which requires us to reverse the order sought to be reviewed.

It will therefore be affirmed.