### LOUISVILLE WOOLEN MILLS v. JOHNSON.

#### In re TAPP CLOTHING CO.

(Circuit Court of Appeals, Sixth Circuit. January 4, 1916.)

#### No. 2791.

1. BANKRUPTCY ⧟350—CLAIMS—PRIORITIES UNDER STATE LAWS.

Ky. St. § 2487, formerly provided that when the property of any public improvement company, or owner or operator of any manufacturing establishment, should be assigned for the benefit of creditors, come into the hands of any receiver, trustee, or assignee for creditors, or in any wise come to be distributed among creditors, employés and persons furnishing materials, or supplies for the carrying on of the business, should have a lien on property involved in the business. Section 2488 provides that such lien shall be superior to the lien of any mortgage or other incumbrance thereafter created, and section 2490 provides that when any such company, owner, or operator shall sell or transfer such business, or when the property engaged in such business shall be taken in attachment or execution, the lien shall attach as fully as is provided in section 2487, and may be enforced by proceedings in equity. In 1914, section 2487 was amended, without any saving clause, by eliminating the provision as to persons furnishing materials or supplies. *Held*, that in a bankruptcy proceeding a party furnishing materials to the bankrupt prior to the amendment was entitled to a preference in distribution, since a retrospective operation will not be given a statute which interferes with antecedent rights, unless such be the unequivocal and inflexible effect of its terms and the manifest intention of the Legislature, and the statute did not create a mere right of priority on distribution, but a right between the equitable consequences of which and of a full technical lien no very solid distinction can be drawn.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ⧟350.]

---

⧟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. BANKRUPTCY ☞350—CLAIMS—PRIORITIES UNDER STATE LAWS.**

The rule that where a statute creates merely an additional remedy for the enforcement of a debt, leaving unimpaired all ordinary remedies, a repeal of the statute without a saving clause prevents the enforcement of the additional remedy did not apply, at least where the property was being distributed in bankruptcy, as by the construction placed upon the statute prior to its amendment by the federal courts, the lien had become and was a part of the bankruptcy law, and this priority was therefore given by the same law which provided for a discharge of the indebtedness and so destroyed all ordinary remedies.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ☞350.]

**3. BANKRUPTCY ☞350—CLAIMS—PRIORITIES UNDER STATE LAWS.**

No preference or lien existed for goods shipped after the amendment, though earlier contracted for, as the vendor at the time of the amendment had nothing but a right to get in the future an inchoate lien if in the future it should ship the goods.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ☞350.]

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

In the matter of the Tapp Clothing Company, bankrupt. From an order denying a claim of preference of the Louisville Woolen Mills, opposed by C. W. Johnson, trustee, the claimant appeals. Reversed and remanded.

W. S. Mendel, of Louisville, Ky., for appellant.

D. A. Sachs, Jr., of Louisville, Ky., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and TUTTLE, District Judge.

DENISON, Circuit Judge. Section 2487 of the Kentucky Statutes provides that when the property of any manufacturing establishment should be assigned for the benefit of creditors, come into the hands of any executor, administrator, commissioner, receiver, trustee, or assignee for the benefit of creditors, or in any wise come to be distributed among creditors, the employés of such establishment "and the persons who should have furnished materials or supplies for the carrying on of such business" shall have a lien upon the property and effects involved in such business. Section 2488 says that this lien shall be superior to the lien of any mortgage or other incumbrance; and section 2490 directs that when such business is sold or transferred, or when the property is taken on attachment or execution, so that the business shall be suspended, "the said liens shall attach as fully as provided in section [2487] and in such case may be enforced by proceedings in equity."

The nature of the interest or right inuring under this statute to the persons who furnish materials has been twice considered by this court. In Ohio Falls Co. v. Central Trust Co., 71 Fed. 916, 18 C. C. A. 386, it was thought to be the clear meaning of the statute that the so-called lien did not mature or develop into a technical lien until the happening of one of the events upon which the statute conditioned its enforce-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment; and in Re Bennett, 153 Fed. 673, 82 C. C. A. 531, it was held that, whatever the real nature of the interest contemplated by statute to be given to or retained by the vendor, it gave such a right of priority upon the distribution of the insolvent estate as must be recognized by the bankruptcy law.

The Kentucky Court of Appeals, in Winter v. Howell's Assignee, 109 Ky. 163, 58 S. W. 591, had said that the right to the lien would be controlled by the law in existence when the assignment for creditors there involved was made. This proposition, within the limits of the facts there considered, is perhaps not questioned by any one; but the statement was obviously a dictum, because, in that case, there had been, between the accruing of the claim and the assignment for creditors, no statutory·change which could be thought to affect the case.

[1] In this condition of the law, as indicated by the decisions, the Woolen Mills contracted to sell materials to the bankrupt. The contract was made and some of the goods were shipped and delivered before June 17, 1914. The remainder of the goods so contracted for were delivered after that date. On June 17th, the Kentucky Legislature re-enacted section 2487, omitting the words above given in quotation marks, whereby it resulted, at least, that the Woolen Mills Company could have no lien for any goods contracted for after the date of the.new law.

In the course of the bankruptcy proceedings, the Woolen Mills Company filed its claim, and asked a preference or lien: First, for the goods contracted and shipped before the repeal of the law; and, second, for the goods contracted before, but shipped after, that day. The referee and the district judge held, in effect, that the statute was merely one giving priority upon the distribution of an insolvent estate, and that, as was thought to be held in Winter v. Howell's Assignee, supra, no effect could be given to a law not in force at the time of the distribution. Accordingly, the claim to preference was rejected; and the claimant appeals.

Since the Kentucky court has not, in any case where the issue was involved, determined the construction of the statute in this respect, we think the effect of the amendment must be controlled by the well-settled rule that:

"A retrospective ·operation will not be given to a statute which interferes with antecedent rights or by which human action is regulated, unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the Legislature.'" Union. Pac. R. Co. v. Laramie, 231 U. S. 190, 199, 34 Sup. Ct. 101, 102 (58 L. Ed. 179).

In Holt v. Henley, 232 U. S. 637, 639, 34 Sup. Ct. 459, 460, 58 L. Ed. 767, there had been an amendment of the Bankruptcy Act which the courts below had thought took full effect as of its date, even as against existing rights of a character seemingly analogous to the "inchoate lien" here involved; but the Supreme Court reached the contrary conclusion, and found it unnecessary to decide the claim, made there as here, that the existing rights were sufficiently fixed and vested to be protected by the Fourteenth Amendment, but held those rights to be sufficiently protected by the rule that:

"The reasonable and usual interpretation of such statutes is to confine their effect, so far as may be, to property rights established after they were passed. * * * The opposite construction * * * would impute to the act of Congress an intent to take away rights lawfully retained and unimpeachable at the moment when they took their start."

Whether we do give to this repeal a retrospective effect if we permit it to cut off the vendor's claim to priority or to lien existing at the date of the repeal depends upon the precise nature and character of the claimant's right. If it was and continued to be of a purely inchoate character, it would be destroyed by a repeal of the statute under which it was claimed (Endlich, Int. Stat. § 280; In re Scott, Bradford, D. J. [D. C.] 126 Fed. 981); and this destruction would not here be called "retrospective," because there would be nothing substantial in the past to be affected; its only direct effect would be in the future. We may, concede, without deciding, that if only section 2487 were involved (and as applied outside of bankruptcy), the subject-matter would be simply a rule of priority or distribution, and would be controlled solely by the law then in force; but sections 2488 and 2490 additionally characterize the vendor's right. They show that even where there is no insolvency or other distribution of any kind, the vendor eventually has a perfect and superior technical lien. As distinguished from and as beyond the mere right of priority on distribution, this right fully justifies the comment made by Justice Lurton (then a judge of this court) in Re Bennett, supra, that:

"It is impossible to draw any very solid distinction between the equitable consequences of such a right and those of a full technical lien."

Of course, the repeal of a law creating "a full technical lien" would not be lightly permitted to have retrospective effect; and we cannot think that we should assume an intent to give equivalent effect to the repeal of a law creating rights so closely analogous to such a lien. It must follow that claimant is entitled to a preference for the goods delivered before June 17th.

[2] We do not overlook the rule that where a statute creates merely an additional remedy for the enforcement of a debt, leaving unimpaired all ordinary remedies, a repeal of the statute without a saving clause prevents the enforcement of that additional remedy. This rule has been applied to mechanics' liens, although there is here a conflict of opinion. 27 Cyc. 23, 24. If it might be regarded as otherwise applicable to the situation before us, it would be distinguished by considering the relation of the Kentucky act to the bankruptcy act. By the effect of the decision in the Bennett Case, it had become and was a part of the bankruptcy law when these goods were shipped that the vendor should have priority over other creditors, if the vendee became bankrupt. This priority was thus given by the same law which provided for a discharge of the indebtedness, and so destroyed all ordinary remedies. Whether such a priority so given and coupled with such an alternative becomes, upon the shipment of the goods, such a vested right as to be beyond legislative control, we do not consider; it at least is above and beyond that mere additional remedy which necessarily falls with the repeal of its creative statute.

228 F.—39

[3] What we think to be a consistent application of the same considerations leads us to conclude that the preference or lien does not exist for goods later shipped, even though earlier contracted for. The whole question is as to the intent of the Legislature. This lien statute having been repealed without any saving clause, we cannot well impute an intent that the repealed law should continue in force as to instances where there was not then even an inchoate lien. For goods not shipped before June 17th, the vendor did not have a right of such a fixed and unavoidable character that it could not be substantially distinguished from a true lien; it had only the right to get in the future an inchoate lien, if, in the future, it should ship the goods; and to say that to destroy this expectant right to acquire an inchoate lien is to give the statute a retrospective effect is going a step further than we can approve. The Legislature not improbably thought that if, at the moment of the repeal, any vendor had contracted to sell goods not yet delivered, and if he regarded his right to preserve an effective lien as essential, he would be able to protect himself sufficiently in some other manner.

A question of the application of payments is suggested, but it was not considered below, and the record is not full enough to justify decision here.

The order is reversed, and the case will be remanded for further proceedings in accordance herewith.