Hubenthal v. Kennedy.

---

HUBENTHAL V. KENNEDY *et al.*

1. **Patent Rights:** SALE OF LICENSE TO USE IN CERTAIN TERRITORY: CONSTRUCTION OF CONTRACT. Defendants sold to plaintiff an undivided half interest in the right to use a certain patented machine in certain territory, but reserved the right to make the machine itself. The right sold was transferable, and there was an arrangement between the parties that they should proceed to make sales of the right of the territory owned in common by them, and that they should account to each other for the proceeds in proportion to the interest held by each. *Held* that defendants were not bound to account to plaintiff for the profits on machines sold by them in the territory to persons who had already purchased the right to use them.

2. **The Same.** In such case plaintiff sold the right to use the machine in a certain county, and took the vendee's notes therefor. He also, at the same time, sold to the vendee, for cash, one of the machines which he purchased of the manufacturers, warranting it for quality and capacity. In an action on the notes the vendee set up a counter-claim for a breach of the warranty, and recovered thereon. *Held* that the sale of the machine was not a matter of common interest between plaintiff and defendants, and that, in an accounting between them, plaintiff was not entitled to an allowance for the costs and expenses of litigation as to the counter-claim.

3. **Partnership:** CONTRACT OF INDIVIDUAL PARTNER. A contract made by one partner by which he does not assume to bind anyone but himself, cannot be held to bind the firm, though relating to the business in which' the firm is engaged.

4. **Appeal:** ACTION FOR ACCOUNTING : TRIAL DE NOVO. The fact that an equitable action for an accounting is tried by a referee does not take away the right of trial *de novo* on appeal.

5. **Interest:** FROM WHAT TIME COMPUTED : DATES NOT SHOWN ON TRIAL. Although interest was due plaintiff from the dates of the several sales made by defendants, yet, since plaintiff has failed to show those dates, he was properly allowed interest only from the date of the action.

*Appeal from Keokuk Superior Court.*—HON. HENRY BANK, JR., Judge.

·FILED, OCTOBER 9, 1888.

THIS is an action in equity for an accounting. By agreement of the parties the cause was sent to a referee, who reported his finding of facts and conclusions of law, to which all of the parties filed exceptions. The conclusion of the referee was that plaintiff was entitled to recover the sum of $7,142.26, with interest from the date of the commencement of the suit. The superior court overruled the exceptions, and entered judgment for that amount. Both parties appeal, defendants' appeal being first perfected.

*James H. Anderson* and *George H. Edmunds*, for appellant Dickinson.

*Hughes & Rankin*, for Kennedy.

*D. F. Miller, Jr.*, and *Frank Hagerman*, for appellee.

REED, J.—The defendant L. B. Kennedy was the inventor of a machine for the manufacture of brick, and had obtained a patent therefor. He and defendant Dickinson were the owners in common of the right covered by the patent for the state of Minnesota and the territory of Dakota. On the the twenty-fourth of July, 1882, they sold an interest in the right to plaintiff, and executed to him an instrument of conveyance, the material part of which is as follows: "* * * I do hereby grant and convey unto the said Charles Hubenthal license under said patent to use said Kennedy's brick-machine, within the state of Minnesota and territory of Dakota, for one undivided one-half interest in the state of Minnesota and territory of Dakota, excepting in this sale all territory previously sold, as per accompanying list, for the sole use and behoof of Charles Hubenthal, and his legal representatives, for the full term of said patent; this license to be transferable in whole or in part, and to include the use of said brick-machine in said territory only, and not outside thereof. Under this license the exclusive right of making said machine is hereby reserved from the license, and retained by the said Kennedy and Dickinson." Plaintiff alleges that there was an arrangement between the parties that they should proceed to make sales of the right in the territory owned in common by them, and that they should account to each other for the proceeds in proportion to the interest held by each, i. e., that for all sales made by him he was to account to each of the defendants for one-fourth of the proceeds, and for all sales made by them they were to account to him for one-half of the proceeds. His complaint is that they have made a number of sales of territory; also, that they have sold a large number of the machines in the territory, upon which they have received a royalty, but that they have neglected and refused to account to him for any portion of the proceeds. The allegation as to the agreement is admitted in the pleadings, but the other allegations are denied.

The evidence shows that the following sales of territory were made: (1) Hennepin and Anoka counties, Minn.; and the townships of Plainview and Elgin, in Wabasha county, Minn.; (2) Pembina, Grand Forks, Taill, Cass, Barnes, Stutsman, Burleigh, and Morton counties, Dak.; (3) Clay county, Minn.; (4) Polk county, Minn.; (5) Walsh county, Dak.; (6) Yardright, West St. Paul, Minn.; (7) Ramsey county, Minn. It also shows that defendant sold a number of machines in the territory, for which they received prices in excess of the cost of manufacture, such excess being denominated royalty. But the sales were all to persons who had previously made purchases of territory or yard rights, and the conveyances or licenses executed to them were in the same form as that given to plaintiff. The referee found that the first six sales enumerated above were made by defendants, and that they were liable to account to plaintiff for one-half the proceeds. He also found that they were not liable on the sales of machines, and, as stated above, the judgment is based upon these findings.

I. The first question arising on plaintiff's appeal is as to the correctness of the finding that defendants are not liable to account to him for the proceeds of machines sold by them in the territory. We are of the opinion that the holding is right. It follows, necessarily, we think, from the character of the right involved and the contract of the parties. The right acquired by plaintiff under his contract is a license to use the patented article (and, perhaps, to sell it), in the territory named, and that right is transferable. The same right, except as to the extent of territory in which it might be exercised, was acquired by each of the subsequent purchasers. But the right to make the article was reserved to defendants. Now, when they sold a machine to one who had already acquired the right to use it, they conferred no additional right as to its use upon him. The excess of the price charged over and above the cost of manufacture, then, was in no sense a

1. PATENT rights: sale of license to use in certain territory: construction of contract.

Hubenthal v. Kennedy.

royalty, although the parties so denominated it. It was a mere profit derived from the sale of the machine. Royalty is a tax or duty paid to the owner of a patent for the privilege of manufacturing or using the patented article. Under his contract plaintiff was entitled to share in the proceeds of the sale of the right to use the machine in the territory. A sale of a machine, which also carried that right with it, would no doubt have been within the agreement, and would have entitled him to a share of the proceeds of the right; but the mere sale of a machine which did not carry such right would not be within it, and that is the character of the sales in question.

II. The sale of Ramsey county, Minnesota, was made by plaintiff. At the same time, and as part of the same transaction, he sold to the purchaser a THE SAME. machine. The price of the machine was paid at the time of the purchase, but the purchaser gave his notes for the price agreed to be paid for the county right. Plaintiff subsequently brought suit on the notes, and the purchaser pleaded a counter-claim upon an alleged breach of a warranty made in the sale of the machine, upon which he recovered the amount paid for the machine. Plaintiff purchased that machine from the manufacturer, who was engaged in making the machines for defendants. The purchase was made under an agreement between him and Kennedy, to the effect that he should place it on exhibition at a fair or exposition to be held at Minneapolis, for the purpose of advertising it in Minnesota. Plaintiff paid the expenses incurred in transporting the machine, and exhibiting it at the fair, and he claimed that he should be credited with one-half of that expense; also, with one-half of the cost and expense of the litigation. The judgment allowed him a credit for the first item, but denied the other. He complains of the rejection of the one item, and Dickinson complains of the allowance, as against him, of the other item. The litigation, it will be observed, grew out of the sale of the machine by plaintiff. The purchaser claimed that, in making the sale, he

gave a warranty of its quality and capacity, and that there had been a failure of that warranty. Now, while the parties may have had a common interest in the right to use the article in that territory, that was the extent of defendants' interest, and plaintiff had authority to bind them only with reference to it. The quality and capacity of the machine is a matter entirely distinct from the right to use it. The warranty, then, was a mere personal undertaking by plaintiff. Defendants were in no manner bound by it; and, as the litigation was for the enforcement of rights arising under that contract, it is clear that defendants are in no manner answerable for the costs and expenses incurred therein.

III. As stated above, plaintiff purchased the machine which he exhibited at Minneapolis, in pursuance of an arrangement between him and Kennedy, and the latter agreed to pay one-half of the expenses which should be incurred in that enterprise. We think the judgment, in so far as it holds Dickinson liable for any portion of those expenses, is erroneous. Kennedy did not assume to bind any one but himself by his agreement, but it was a mere personal arrangement between him and plaintiff. If it should be conceded that he and Dickinson were partners, still, as he did not assume to contract for the firm, it was not bound by the agreement. It is proper to remark in this connection that, while it is alleged in the petition that the defendants were partners, they were sued individually. They also answered separately, and each appealed from the judgment, and each may urge any objection to it, so far as it affects him, whether such objection is available to the other or not.

*3. Partnership: contract of individual partner.*

IV. The referee found, and the judgment determines, that the first six sales enumerated above were made by defendants. The evidence shows that some of those sales were in fact made by one J. A. Boyd, while others were made by one Dow. The finding was that those parties acted as agent for defendants in making the sales. It was contended that this latter finding is

Hubenthal v. Kennedy.

contrary to the evidence. The question is rendered important by the fact that Boyd has received the proceeds of the sales, but has failed to account for much the larger part of them. If the finding that he was their agent alone is correct, the conclusion that they are answerable to plaintiff for the portion of the proceeds to which he is entitled under the agreement follows necessarily ; for, in that case, the rights of the parties are the same as though defendants had made the sales in person, and had personally received the proceeds. It would not be profitable to set out at length the evidence bearing on this question. We deem it sufficient to say that we have examined it with care, and in our opinion the finding of the referee is sustained by a clear preponderance of the testimony ; and, in reaching that conclusion, we have not regarded the finding as having the force of a special verdict, as counsel for plaintiff contended we

4. APPEAL: action for accounting: trial de novo.

should, but have regarded the case as triable *de novo.* The fact that it was tried below to a referee does not, in our opinion, affect the question as to the manner of trial in this court. We think, also, that the judgment as to its amount, except in the particular named, is sustained by the evidence.

V. The judgment allows plaintiff interest on the amount found due him from the date of the institution

5. INTEREST: from what time computed: dates not shown on trial.

of the suit. It was contended that interest should have been allowed from the date of the several sales. As plaintiff was to receive one-half of the proceeds of the sales, he doubtless would be entitled to interest on the various sums from the time they came into the hands of defendants, or, rather, of their agent. But those dates are not shown. It was, therefore, impossible to compute the interest, and under that state of facts it can be allowed only from the commencement of the suit. On the appeal of defendant Dickinson the judgment will be modified by reducing it to the extent of $102.26,—that being the amount erroneously awarded against him on

account of the expense incurred in exhibiting the machine at Minneapolis. In other respects it will be affirmed.

MODIFIED AND AFFIRMED.