### GINSBERG et al. v. LINDEL.

### In re GLOBE DEPARTMENT STORE.
#### No. 11542.

Circuit Court of Appeals, Eighth Circuit.
Nov. 28, 1939.

Joseph I. Brody, of Des Moines, Iowa (George E. Brammer, Clyde B. Charlton, Louis A. Parker, and Thomas B. Roberts, all of Des Moines, Iowa, on the brief), for appellants.

Haemer Wheatcraft, of Des Moines, Iowa (J. Rudolph Hansen, of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

THOMAS, Circuit Judge.

On November 22, 1938, Globe Department Store, an Iowa corporation, filed its voluntary petition in bankruptcy and was adjudicated a bankrupt on the same day. Xen Q. Lindel, the appellee, was thereafter appointed trustee.

The bankrupt was engaged in owning and operating a department store in Des Moines, Iowa, in a building standing in part on land leased from the appellants' predecessor. The appellants as lessors filed their proof of debt in the bankruptcy proceedings alleging a statutory and a contractual lien for rent and praying that their claim be adjudged a prior and paramount lien on the property of the bankrupt. The trustee filed objections to the allowance of the claim.

The amount of the claim involved on this appeal, without interest, is the sum of $14,093.66, or, if a certain amendment to the lease governs, $8,043.66. These amounts consist of the following items:

1. Rent payable by the terms of the lease for the period from December 1, 1937, until October 31, 1938.............. $10,083.33 plus interest; or if the amendment governs, $4,033.33
2. Taxes paid by the appellants 2,069.97
3. Payments by appellants on a mortgage covering the premises ...................... 1,940.36

$14,093.66

After a full hearing the referee entered an order allowing the claim in the amount of $8,422.21 of which amount $3,689.96 was allowed as a prior claim and $4,732.25 as a general claim. The appellants filed a petition to review the order of the referee; and the court entered an order allowing the claim for $8,043.66, but granted appellants priority for only $733.33 and allowed them a general claim for the remainder of $7,310.34. From this order of the court the lessors have appealed.

On this appeal the lessors take exception to two features of the court's order: First, to the allowance of the claim in the amount of $8,043.66 with interest instead of for $14,093.66 with interest; and, second, to the granting of priority for the sum of only $733.33 instead of for the entire claim whether it be fixed at $8,043.66 or at $14,093.66.

1. *The amount of the claim.* The difference in the amount claimed and the amount allowed by the court arises out of these circumstances. The original lease, made July 1, 1925, provided that the rent for the leased premises for the period under consideration should be $11,000 per annum payable in equal monthly installments in advance. On November 16, 1932, the lease was amended. The amendment reduced the monthly rentals to $366.66 on condition that the lessees should not default in any of their obligations under the lease. In case of any such default it was provided that "said reductions of rent herein granted shall be null and void ab initio." The lessees defaulted, and the lessors claim that for the condition broken they are entitled to the higher rentals. The court denied the claim on the grounds (1) that the conditional clause in the amendment to the lease is void as imposing a penalty, and (2) that the lessors had waived the breach of condition and were estopped to assert a right to the higher rentals under the original lease.

The court did not err in holding that the lessor had waived the breach of the condition in the amendment to the lease. Prior to the filing of the petition in bankruptcy on November 22, 1938, it was known to the lessors and to the creditors of the bankrupt that the bankrupt was in financial difficulties. The lessors were then negotiating with an "eastern concern with the view of leasing" the premises occupied by the bankrupt to it. Several of the creditors were about to commence suits against the bankrupt. The lessors feared that if proceedings were begun they would affect the negotiations for the new lease and "the deal might fall through and every body lose out." Under these circumstances about three weeks before the petition in bankruptcy was filed a representative of the lessors met the representatives of the threatening creditors and an agreement was reached by the terms of which the lessors promised that they would not make a claim for the higher rentals reserved in the original lease but only for the rentals provided for in the amendment in consideration for which the creditors agreed that they would not commence suits against the bankrupt while the negotiations were in progress. By this arrangement the creditors would benefit by the reduced claim of the lessors and the lessors would benefit by being able to carry on the negotiations for the new lease for their property without interference from the creditors. Each party promised to relinquish a known right in consideration of a like relinquishment by the other. The creditors performed their part of the agreement and the lessors are bound by their promise. In this court the lessors claim that it was not shown that their representative had authority to waive any of their rights. This claim was not made before the referee nor assigned as error here and it can not be raised here for the first time. Britton v. Western Iowa Co., 8 Cir., 9 F.2d 488, 491, 45 A.L.R. 711. The court did not err in establishing the claim in the amount of $8,043.66, instead of $14,093.66, and the order in that respect must stand.

2. *Priority.* Lessors' claim may be divided into two parts for the purpose of considering the right of priority: (1) $4,033.33 allowed by the court as rent and (2) $4,010.33 allowed for the payment by the lessors of taxes in the sum of $2,069.97 and delinquent payments on a mortgage in the sum of $1,940.36.

To secure the payment of the $4,033.33 the lessors claim the protection under the laws of Iowa of a statutory landlord's lien.

In the lease as amended the lessees covenanted and agreed to pay to the lessor as rent for said premises $4,400 per annum in equal monthly installments ($366.66) in advance. The unpaid rent for which the lien is in dispute is for the period from December 1, 1937, to October 31, 1938, all included within the year preceding the filing of the petition and the adjudication in bankruptcy. The Code of Iowa of 1935,

sections 10261 and 10262, provides that "A landlord shall have a lien for his rent upon * * * personal property of the tenant which has been used or kept" on the leased premises; and that "Such lien shall continue for the period of one year after a year's rent, or the rent of a shorter period, falls due." The Supreme Court of Iowa has held, Richardson Brothers v. Peterson, 58 Iowa 724, 13 N.W. 63, 64, that "The lien given by the statute is a charge upon the property of the tenant specified, to secure the rent due under the lease. It attaches to the property and cannot be defeated by the sale or removal thereof." Under the Bankruptcy Act of 1898, 11 U.S.C.A. § 1 et seq., such a lien is valid against a trustee in bankruptcy. Henderson v. Mayer, 225 U.S. 631, 32 S.Ct. 699, 56 L.Ed. 1233; Richmond v. Bird, 249 U. S. 174, 39 S.Ct. 186, 63 L.Ed. 543; Britton v. Western Iowa Company, 8 Cir., 9 F.2d 488, 45 A.L.R. 711. There can be no doubt that under the Iowa law and the Act of 1898 the $4,033.33 of rent accruing within the year preceding bankruptcy was secured by a valid statutory lien and was entitled to priority.

Section 64, sub. a of the Act of June 22, 1938, known as the Chandler Act, 52 Stat. c. 575, pp. 840, 874, 11 U.S.C.A. § 104, sub. a, amending the Act of 1898, provides that "priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy." Section 1, sub. (13) of the Act, 11 U.S.C.A. § 1, sub. (13), provides that "Date of bankruptcy" shall mean "the date when the petition was filed." By its terms this Act became effective September 22, 1938, just two months before the petition in this proceeding was filed.

The trial court held that the right of the lessors to priority for rent must be determined by application of the rule of the Chandler Act and not under the Act of 1898. Accordingly only that part of the rentals accruing within three months of the date of bankruptcy was allowed priority. This sum was determined to be $733.33. For the rentals accruing within twelve months, but prior to the three month period, the court held that the lessors were entitled only to a general claim in the amount of $3,300.

The appellants contend that the court erred in holding that their right to priority is governed by the Chandler Act and in refusing to grant priority to their entire claim for rent. The grounds of their contention are: (1) The Iowa landlord's lien for rent past due on September 22, 1938, the effective date of the Chandler Act, was a vested property right; (2) the Chandler Act, if construed to apply to such past due rent, destroys a vested property right and violates the Fifth Amendment to the Constitution, U.S.C.A.; and (3) the Chandler Act should not be construed to operate retrospectively, but only prospectively. The trustee contends that, (1) a statutory lien is not a property right, and (2) Congress may fix standards and establish limitations in bankruptcy affecting a creditor's remedy so long as the statutory provisions are fair, reasonable and equitable.

We are not called upon in this case to consider the constitutional validity of section 64, sub. a of the Chandler Act when applied to landlord's liens arising after the effective date of the Act. In this case the dispute involves only rights arising before the Act went into effect.

The Chandler Act is an amendatory act, and the order of the court gave to it a retrospective effect. The effect of the order is to destroy a lien already vested in the lessors to secure the payment of $3,-300. That obligation was fixed, and the lien was enforceable under the Iowa law. The trustee's contention that appellants' statutory lien is not a vested property right is erroneous. Smith v. Russell, 223 Iowa 123, 272 N.W. 121, 125; Richardson Brothers v. Peterson, supra; Grant v. Whitwell, Marsh & Talbott, 9 Iowa 152, 157; Britton v. Western Iowa Co., 8 Cir., 9 F.2d 488, 490, 45 A.L.R. 711; 16 C.J.S., Constitutional Law, § 233. The further contention that a right created by statute may be annulled by statute is equally erroneous in so far as the argument implies that vested property rights may be destroyed. Legislation by Congress may supersede that of a state in a particular instance, but Congress can not repeal a state law; nor can it exert control over individual property rights except in the proper exercise of its constitutional powers. The state which enacted the law may repeal it, but the repealing act can not destroy property rights vested under the old law. Ettor v. Tacoma, 228 U.S. 148, 155, 156, 33 S.Ct. 428, 57 L.Ed. 773; Hannahs v. Felt, 15 Iowa 141.

Of course under the bankruptcy power Congress may provide for the fair and equitable distribution of a debtor's property among his creditors; may discharge the debtor from liability for pre-existing debts; may impair or destroy the obligation of private contracts; and may effect changes in the lienholder's remedy or delay its enforcement. Continental Illinois Nat. Bank v. Chicago Rock Island & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Kuehner v. Irving Trust Co., 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340; Wright v. Vinton Branch, 300 U.S. 440, 445, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. There is, however, a significant difference between a property interest and a contract, Kuehner v. Irving Trust Co., supra, and the exercise of these powers does not permit the total or partial destruction of vested property rights. Due process of law "inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing." Ochoa v. Hernandez, 230 U.S. 139, 141, 33 S.Ct. 1033, 1041, 57 L.Ed. 1427. Congress, in the exercise of the bankruptcy power, is bound by this principle and may not take a property right from one creditor and transfer it without compensation to another without violating the Fifth Amendment. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 601, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. When the vested lien of the landlord is taken away by an order of the bankruptcy court and the property impressed with that lien is given to the general creditors of the bankrupt, the landlord is clearly deprived of a property right without just compensation. That is as true when the property right is a landlord's lien as when it is a mortgage.

There is nothing contained in the Chandler Act to indicate that Congress intended that section 64, sub. a, should be construed retrospectively; and in the absence of explicit language requiring such construction we are not disposed so to construe it, especially when to do so would result in depriving a citizen of a vested right. It is the general rule that a retrospective operation will not be given to a statute which interferes with antecedent rights, unless such be the unequivocal and inflexible import of its terms and the manifest intention of the legislature. U. S. Fidelity & Guaranty Co. v. United States, to Use of Struthers Wells Co., 209 U.S. 306, 314, 28 S.Ct. 537, 52 L.Ed. 804; Louisville Woolen Mills v. Johnson, 6 Cir., 228 F. 606; Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767; Jones v. Fidelity & Columbia Trust Company, 6 Cir., 73 F.2d 446; Western Pacific R. Corp. v. Baldwin, 8 Cir., 89 F.2d 269; Home Indemnity Company v. State of Missouri, 8 Cir., 78 F.2d 391.

There remains for consideration appellants' alleged right of priority for taxes paid by them on the leased premises in the amount of $2,069.97 and for payments upon a mortgage in the sum of $1,940.36. Both these payments were made within one year prior to the date of filing the petition in bankruptcy. Appellants contend that they are entitled to priority for these payments (1) because by the terms of the lease they have the status of rent, and (2) because of a chattel mortgage clause in the lease.

By the terms of the lease the lessees agreed "as part of the consideration for this lease and in addition to said rent, to pay and discharge promptly and before they become delinquent, all taxes," etc. Another section provided that: "The lessor shall have the right at his option to pay * * * all taxes * * * liens and any and all other sums against said premises * * * for which the lessees are liable * * * and all sums so paid by the lessor shall be treated as so much rent due the lessor from the lessees, secured by the lien given to lessor to secure the payments to be made under this lease and shall be payable to the lessor at the next rent day with interest * * *."

Pursuant to another provision of the lease the lessors joined with the lessees in a mortgage on the building and leased premises with the agreement that the lessors should not be personally liable for the payment of the amount secured. The lease then provided:

"It is further covenanted and agreed by the lessees that the lessor in addition to the lien provided by law, shall have a lien for the rent reserved in this lease, for all taxes and assessments paid by lessor, for all other money paid by lessor under the provisions of this lease and for any damages lessor may sustain by reason of any

breach of this lease, including all costs, expenses and attorney's fees upon any building and improvements now upon or hereafter placed upon said premises, upon the leasehold estate hereby created, upon all the property of the lessees kept or used upon said premises whether the same is exempt from execution or not, and also upon the rents due or to become due from subtenants of any building or improvement or any part thereof situated on said premises, and such lien shall continue until the amounts due are paid and may be enforced by the procedure for the enforcement of landlord's liens or in any other manner authorized by law."

The lessees defaulted in the payment of taxes and in payments on the mortgage; and the delinquent payments were made by the lessors.

 In view of what has been said above, if these items of taxes and payments on the mortgage by the lessors are to be classified as rent under the foregoing provisions of the lease they are entitled to priority, because the payments were made in 1938 within the year preceding the date of bankruptcy. It is clear also that if these items are not classified as rent and if the contractual lien is binding upon the trustee, the items are entitled to priority, because such a contractual lien is not included within the restrictions of section 67, sub. c or of section 64, sub. a of the Chandler Act, 11 U.S.C.A. §§ 107, sub. c and 104, sub. a. Section 64, sub. a has already been referred to. Section 67, sub. c provides that "statutory liens, * * * on personal property not accompanied by possession of such property, and liens whether statutory or not, of distress for rent * * * shall be restricted in the amount of their payment to the same extent as provided for * * * rent * * * in subdivision a of section 64 [104] of this Act [title]." A contractual lien is not "distress for rent." Grant v. Whitwell, 9 Iowa 152, 156; Merrit v. Fisher, 19 Iowa 354, 356; In re Westside Paper Company, 3 Cir., 162 F. 110, 15 Ann.Cas. 384. Neither is it a statutory lien, such as is a landlord's lien.

It may be that the question whether the lease discloses an intent of the parties to consider the payments for taxes and the mortgage indebtedness as rent is debatable. To sustain their contention that these payments must be regarded as rent the lessors rely upon Britton v. Western Iowa Company, supra; McCann v. Evans, 3 Cir., 185 F. 93; and other like cases; while the trustee relies upon Lamoine Mott Estate v. Neiman, 8 Cir., 77 F.2d 744, 99 A.L.R. 1097. On this point compare our decision in Miles Corporation v. Lindel, Trustee, 8 Cir., 107 F.2d 729, decided at this term. Passing by this question and assuming that the payments should not be classified as rent within the meaning of the contract, we shall consider the effect to be given to the contractual lien.

The trustee's objection to the contractual lien is not that the lease does not create a lien binding upon the parties to it, but that, because the bankrupt changed its name after the lease was recorded and indexed, the record did not impart constructive notice to the trustee, and actual notice was not proven.

In the original lease, made in 1925, the Frederick Investment Company, Inc., an Iowa corporation, and three individuals were named as lessees. In 1928 the original lessees assigned their interests to The Globe, Inc., an Iowa corporation. On November 16, 1932, the trustee in bankruptcy of The Globe, Inc., assigned to The Post Company, Inc. In all these assignments the assignee assumed and agreed to discharge the obligations of the lessees under the original lease and such amendments as had been added at the time of the assignment. All of the instruments including the original lease had been "duly and legally acknowledged by all signatories thereto."

It was stipulated that the original lease, the supplements thereto, and the assignments thereof were all recorded and indexed in the real estate and chattel mortgage records of Polk County, Iowa, on and between September 13th and November 17th, 1932.

 When such requirements of the Iowa law for recording have been complied with the record is constructive notice to all the world of the contents of the instrument creating the lien and of the rights of the parties thereto. Root v. Schaffner, 39 Iowa 375; Oswald v. Hayes, 42 Iowa 104; In re Cutler & Horgen, 204 Iowa 739, 212 N.W. 573, 575, 217 N.W. 448, 54 A.L.R. 527.

It was further stipulated "that the bankrupt was originally incorporated as the Post Company and that it was subsequently changed to the Krasne Company and sub-

sequently to the name of the Globe Department Store but that each of those above names referred to are the same corporation which is the bankrupt corporation."

The change of the name of the bankrupt corporation from The Post Company, then to the Krasne Company and then to the Globe Department Store occurred after the recording and indexing of the lease and the assignments.

The trial court found that "at the time the bankrupt became such there was no lease of record that would give constructive notice to the Trustee of any lien upon the property of The Globe Department Store (bankrupt)."

It will be noted that under the Iowa law a contractual lien created by the terms of a lease is not inconsistent with a statutory landlord's lien resulting from the same lease. Both liens may be enforced by the lessor against purchasers of the personal property covered by the liens. Pickler v. Lanphere, 209 Iowa 910, 914, 227 N.W. 526; Mau v. Rice Bros., 216 Iowa 864, 867, 249 N.W. 206. Such a lien is in effect a chattel mortgage. Fejavary v. Broesch, 52 Iowa 88, 2 N.W. 963, 35 Am. Rep. 261; Sioux Valley State Bank v. Honnold, 85 Iowa 352, 52 N.W. 244. It was held in In re Cutler & Horgen, supra, that the record of a chattel mortgage was constructive notice to all the world and binding on all who dealt with a partnership after it had changed its name. It is equally true that the recording of a contractual lien given by a corporation is constructive notice of its contents to all the world and binding upon all who deal with the corporation after it has changed its name. This is particularly true in the instant case for a further reason. The lessee corporation in this case is an Iowa corporation with its principal place of business at Des Moines in Polk County. The Code of Iowa of 1935 requires every Iowa corporation before commencing business to record articles of incorporation containing its name and principal place of business in the office of the Secretary of State, and also in the office of the County Recorder (section 8342) in the county where the principal place of business is located. Thereafter notice of incorporation must be published once each week for four consecutive weeks in some newspaper as convenient as practicable to the principal place of business, which notice "must contain * * * the name of the corporation and its principal place of business." Code, section 8357. The name of a corporation can be changed only by amendment to the articles of incorporation, and an amendment must be "recorded, approved and published as the original articles are required to be." Code, section 8360. These statutes were in force in Iowa when the transactions here involved occurred. See Code of Iowa of 1897 sections 1610, 1613, 1615. The recording of the articles and the publication of notice required by the statute give constructive notice to all the world of the contents of the articles and amendments thereto. Bank of Monroe v. Gifford, 72 Iowa 750, 32 N.W. 669. The lease, the assignment of the lease by the terms of which the corporation assumed the obligations of the lessee thereunder, the articles of incorporation of the Post Company, Inc., and the amendments changing its name to that of the bankrupt were all of record in the same office, the office of the county recorder of Polk County. The record gave constructive notice to the trustee, as it did to every one acquiring a subsequent lien on the personal property of the bankrupt, of the appellants' prior lien. If the rule were different it would be dangerous to do business with an Iowa corporation.

We conclude that the court erred in holding that the lessors' contractual lien was not binding upon the trustee. He had constructive notice of the lien, and it was unnecessary to prove actual notice.

The order of the court should be modified to allow the appellants' claim with priority in the amount of $8,043.66 and interest, and as so modified the order should be and it is

Affirmed.